John P. Lomenzo, J.
The defendant is charged with a violation of the following ordinance of the City of Rochester: ‘ ‘ Sec. 70-61, Mufflers. No person shall operate on any public street or park within the City of Rochester, a motor vehicle equipped with a so-called ‘ Hollywood ’ muffler or with any muffler that produces a noise louder than that of the standard type muffler used in the manufacture of the car being so operated. The use of so-called ‘ cut-outs ’ is prohibited.”
On February 28,1957, the defendant operated a motor vehicle, owned by someone other than himself, upon Monroe Avenue in the city of Rochester. The arresting police officer drove alongside of defendant and directed him to stop. The police officer testified that his attention was directed to the motor vehicle being-operated by defendant due to the loud noise coming from the muffler of the motor vehicle. Thereafter, the arresting officer directed defendant to race his motor and, after hearing the sound emitted through the muffler, arrested defendant.
The contention of the People is that the subject motor vehicle was being operated with a so-called “ Hollywood ” muffler, or in any event with a muffler that ‘ ‘ produces a noise louder than that of the standard type muffler used in the manufacture of the car being so operated.”
The ordinance in its entirety is unconstitutional. Statutes or ordinances of a penal nature must be definite in specifying conduct condemned or prohibited and must afford some comprehensible guide, rule or information as to what must be done and avoided so that an ordinary member of society may know how to comply with the law. (People v. O’Gorman, 274 N. Y. 284; People v. Grogan, 260 N. Y. 138.) The subject ordinance is so vague as to be invalid for lack of an objective standard.
A muffler is a device attached to the exhaust pipe of a gasoline engine and through which the exhaust passes, used to muffle or deaden the sound of the explosion. There is no legal definition of a “ Hollywood muffler ” or, for that matter, a “ standard type muffler ”. The proof adduced at the trial establishes that the name “ Hollywood ” is applied in the trade to straight-line *443 mufflers packed with an absorption material in order to absorb noise. The expert engineer for the People testified that there is no definite standard for mufflers and that the origin of the name ‘ ‘ Hollywood ’ ’, as applied to mufflers, is “ sort of vague and is fairly hard to define the source of. ’ ’ He further testified that the name “ Hollywood ’ ’ is neither technical nor scientific in its derivation and that the so-called “ Hollywood ” muffler acts on absorption principles, and the so-called standard type muffler operates on a cancellation principle. Absorption type mufflers have been used as conventional mufflers for quite a time and have been sold on the automotive market for many years and did not come out on the market as a so-called “ Hollywood ’ ’ muffler. The conventional cancellation type or absorption type of muffler may be made effective for the purpose intended, that of muffling sound. The standard adopted by the ordinance in establishing a violation thereof is conclusive, that is, the operation of a motor vehicle on a public street or public park equipped with a “ Hollywood ” muffler per se constitutes a violation of the ordinance. Aside from the difficulty encountered in• attempting to define what a “Hollywood” muffler is, the engineer expert for the People testified that the offensiveness of the sound emitted from an absorption type muffler depends upon the manner in which the motor vehicle is operated. He testified that a sudden, as distinguished from a steady, acceleration produces a noise through the muffler which would be offensive ; otherwise, not. The ordinance purports to adopt a conclusive standard by nomenclature which in fact does not exist, and, consequently, the ordinance does not afford a comprehensible guide to an ordinary member of society and is devoid of intelligent expression as to what must be done and avoided. There is no standard here for the guidance of the court, and without such a-measure by which to judge the conduct of man, statutes of a penal nature are too vague and indefinite for enforcement, and they are unconstitutional. (See People v. Grogan, 274 N. Y. 284, supra.)
The second part of the subject ordinance prohibits the use of a muffler that “ produces a noise louder than that of the standard type muffler used in the manufacture of the car being so operated. ’ ’ The standard and guide adopted by this portion of the ordinance depends upon the determination of the manufacturers of motor vehicles as to what type of muffler is to be attached to their product. The expert engineer for .the People testified that the fact a muffler is factory equipped does not make that muffler a standard muffler. A motor vehicle equipped at the factory with an absorption type muffler does not make *444 it more or less offensive simply because the manufacturer has determined to employ that type of muffler in its product. A standard or guide to determine compliance with or violation of an ordinance penal in nature should not be made to depend upon the collateral thinking of a particular industry. The proof establishes the unreliability of such a standard since the testimony reveals that absorption type mufflers for some time past and presently constitute stock equipment, and many motor vehicles are being delivered from the factory equipped with absorption type mufflers.
Confirmation of the view taken by the court is found in the statute enacted by the State of New York relating to the same subject. Subdivision 1 of section 15 of the Vehicle and Traffic Law of the State of New York requires only that a motor vehicle “ shall have a suitable muffler or device to prevent unnecessary noise from exhaust gases ’ ’. The State does not indulge in prescribing what make or type of mufflers are prohibited, nor does it attempt to permit a standard to be employed that depends upon any decision that might be made by those in the automotive or other related industries. It would be ridiculous to contend that motor vehicles which come off the assembly line with a type muffler that produces an offensive noise are nonetheless legal since the ordinance establishes exactly that standard.
We are a noisy nation and noise is perhaps the most irritating aspect of twentieth-century living. Legislation and law enforcement necessarily ignore the thunder of multi-engined aircraft transports overhead, the roar of diesel trains and trucks, motorcycles and many other offensive noise-producing, up-to-date mechanical equipment. Progress unfortunately begets noise, even offensive noise, and many such noises are necessarily accepted as daily sounds of modern living. However, unnecessary noise is a subject for proper legislation. The State statute purposely employs the words “ unnecessary noise The court certainly agrees that an offensive noise emitted through any type muffler of a motor vehicle is unnecessary and remote to the efficient and proper operation of pleasure motor vehicles. When inconsiderate motorists misuse and abuse muffler equipment in the operation of a motor vehicle and produce thereby offensive noise, they are confronted with a yiolation of the State law on the subject, section 15 of the Vehicle and Traffic Law, which establishes the uniform State-wide rule relating to muffler equipment of motor vehicles.
There is a serious question here as to whether the subject ordinance is invalid on the further ground that the City of Rochester lacked authority to enact the same and does not con *445 stitute a valid exercise of any power which has been delegated to the City of Rochester by the State of New York. (See Vehicle and Traffic Law, §§ 54, 90; see, also, People v. City of Buffalo, 152 Misc. 375.)
The motions made by defendant, upon which the court reserved decision, are granted. The defendant is acquitted and the information is dismissed.